Sanford L. **BESHEAR**, Jr., Plaintiff,

v.

Chancellor Thomas F. **BUTT**, Chairman; Attorney William S. Arnold, Vice Chairman; Circuit Judge Stark Ligon, Member; Municipal Judge William C. Gilliam, Member; Attorney Phillip E. Dixon, Member; Attorney James O. Cox, Member; Dewey Stiles, Member; Joy Greer, Member; Annie Abrams, Member; Court of Appeals Judge George Cracraft, Alternate; Circuit Judge Harry Barnes, Alternate; Chancellor Annabelle Davis Imber, Alternate; Attorney David "Mac" Glover, Alternate; Attorney Spence Leamons, Alternate; Attorney Steve Engstrom, Alternate; Sherry Walker, Alternate; O.C. Jones, Alternate; Beverly Lambert, Alternate; and James A. Badami, Executive Director, the Arkansas Judicial Discipline and Disability Commission, Defendants.

Civ. No. PB–C–91–218.

United States District Court, E.D. Arkansas, Pine Bluff Division.

Sept. 16, 1994.

Sanford L. Beshear, Jr., Rison, AR, for plaintiff.

Winston Bryant, Atty. Gen. by Melissa K. Rust, Asst. Atty. Gen., Little Rock, AR, for defendants.

## *MEMORANDUM OPINION AND ORDER*

GEORGE HOWARD, Jr., District Judge.

The parties have submitted the case for decision on cross-motions for summary judgment and the December 2nd stipulation of facts recited as follows:

1. Plaintiff Sanford L. Beshear, Jr. (Beshear), is an attorney, citizen and resident of Cleveland County, Arkansas.

2. Beshear was elected Municipal Judge of the City of Rison and Cleveland County, Arkansas and began serving as Municipal Judge on January 1, 1987.

3. On or about April 20, 1990, Beshear announced that he was a candidate for election as Circuit Judge for Calhoun, Cleveland, Columbia, Dallas, Ouachita and Union Counties in Arkansas in the Democratic Primary Election campaign.

4. Circuit Judge Francis T. Donovan was a candidate for reelection as Circuit Judge for Faulkner, Van Buren and Searcy Coun-

ties in Arkansas during the 1990 Democratic Primary.

5. The Arkansas Judicial Discipline and Disability Commission (AJDDC) was created pursuant to Amendment 66 of the Arkansas Constitution, which was approved by the Arkansas voters in 1988. The AJDDC, through its Director, Chairman, Vice–Chairman, Members and Alternates, is responsible for the enforcement of the Arkansas Code of Judicial Conduct.

6. The Court may take judicial notice that the practice and procedure rules that deal with the related pleas of guilty and nolo contendere are stated and set forth as Article VII, Rule 24 through Rule 26.1 of the Arkansas Rules of Criminal Procedure.

7. The Court may take judicial notice that Rule 24.3 and the Comment to Rule 24.3 of Article VII of the Arkansas Rules of Criminal Procedure state:

(a) A plea of guilty or nolo contendere shall be received only from the defendant himself in open court, except that counsel may enter a plea of guilty on behalf of a defendant in misdemeanor cases where only a fine is imposed by the court. If the defendant is a corporation, the plea may be received from counsel or an authorized corporate officer.

(b) With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty or nolo contendre [contendere], reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

(c) A defendant may plead nolo contendre [contendere] only with the consent of the court. The Court shall not accept a plea of nolo contendere unless it is satisfied, after due consideration of the views of the parties, that the interest of the public in the effective administration of justice would thereby be served.

(d) No plea of guilt or nolo contendere shall be accepted by any court unless the prosecuting attorney for the governmental unit in which the offense occurred is given opportunity to be heard at the time the plea is tendered. [Amended by Per Curiam July 13, 1987, effective October 1, 1987.]

*Comment to Rule 24.3.* It is not the purpose of this rule to impose any limitation on a court's discretion to refuse to accept either a plea of guilty or a plea of nolo contendere.

8. By letter from Gary R. Burbank, Attorney at Law, El Dorado, Arkansas, dated May 15, 1990, James Badami, Executive Director of the AJDDC, was informed as follows:

I enclose herewith an example of a flier Mr. Beshear is personally handing out in the El Dorado area. I am submitting this document to you for consideration of the same in light of Cannon 7 of the Code of Judicial Conduct. In particular, I would ask that you consider Mr. Beshear's interpretation of Rule 25.3 of the Arkansas Rules of Criminal Procedure as stated in the flier. From my reading of the flier, Mr. Beshear seems to be suggesting that plea bargaining is "not acceptable" by law under the provisions of the Arkansas Rules of Criminal Procedure. This is clearly not the case as the rules specifically permit plea bargaining and set out detailed procedures to be followed in the plea bargaining process. I fear that in this regard the flier may be significantly misleading to the public.

Gary Burbank attached to his letter a copy of a Judge Sanford Beshear campaign flier.

9. By sworn statement from Gary Burbank, dated July 3, 1990, the AJDDC was informed as follows:

My complaint was set out in my letter to the commission dated May 15, 1990, a copy of which is attached thereto. As stated therein, my complaint is based on Judge Beshear's personal circulation of a campaign flier which contained representations as to the Rules of Criminal Procedure which appeared to me to be badly misleading to the public. I enclosed with my letter an original copy of the flier.

10. In other campaign statements, plaintiff acknowledged that "plea bargaining" is legal, but stated he did not approve of the way it was being handled and therefor, if elected, would not accept "plea bargaining."

11. After the preliminary hearing, Circuit Judge Francis T. Donovan was informed by letter from the Executive Director of the AJDDC dated November 16, 1990, that he was admonished by the AJDDC for violating Canon 7(B)(1)(c) of the Arkansas Code of Judicial Conduct for stating during his 1990 primary election campaign that he would not allow "plea bargaining."

12. A preliminary hearing on the complaint filed by Gary R. Burbank against Beshear was held by the AJDDC on April 26, 1991.

13. At the preliminary hearing on April 26, 1991, Chancellor Thomas F. Butt, Chairman of the AJDDC, advised Beshear that the AJDDC would not receive any comments on the constitutionality of Canon 7(B)(1)(c) as follows:

> JUDGE BUTT: The purpose of this proceeding this afternoon is to inquire into the matter and to receive such statements as you are to make on your side of this affair. I would say to you, sir, that the Commission is aware of that portion of your motion to dismiss which addressed the suspect constitutionality of the particular canon that is involved, and I am obliged to say to you, sir, that this Commission is not empowered to pass upon that, and therefore we will not receive any comments by you on it because it is beyond our competency to decide it. So, if you would confine your remarks to the matter of the extent, if any, to which you believe that complaint of the alleged violation of this cannon is or is not well founded, and with that we'll be glad to hear your statement.

14. By letter from the Executive Director of the AJDDC dated April 30, 1991, Beshear was notified that the AJDDC found sufficient cause to proceed to a probable cause hearing to be conducted on May 17, 1991, in the investigation of a complaint filed against Beshear by Gary R. Burbank.

15. On May 13, 1991, Beshear filed this present complaint against defendants seeking to have Canon 7(B)(1)(c) of the Arkansas Code of Judicial Conduct, adopted by per curiam order of the Arkansas Supreme Court on June 6, 1988, declared unconstitutional on its face as a matter of law and as applied to Beshear; for a preliminary, temporary and/or permanent injunction against defendant prohibiting enforcement of the Canon; and for the award of costs, and attorney's fees.

16. On May 13, 1991, Beshear filed a Motion for Temporary Restraining Order of, in the Alternative, Motion for Preliminary Injunction; and Application for Temporary Restraining Order Without Notice to Adverse Party; and an Affidavit by Plaintiff in Support.

17. By Response to Motion for Temporary Restraining Order filed May 16, 1991, the defendants agreed to postpone the probable cause hearing of Beshear scheduled for May 17, 1991, pending judicial resolution of issues raised in the complaint and agreed to file answers, motions and/or briefs by June 3, 1991, to expedite this matter.

18. Declaratory judgment, in accordance with the Memorandum Opinion and Order filed September 18, 1991, was entered on September 18, 1991, in favor of plaintiff and against defendants finding that Canon 7(B)(1)(c) of the Arkansas Code of Judicial Conduct violates the First Amendment to the United States Constitution and permanently enjoined the defendants from enforcing Canon 7(B)(1)(c).

19. A Notice of Appeal to the United States Court of Appeals for the Eighth Circuit was filed by the defendants on October 17, 1991.

20. The appellate court reversed this Court's order and remanded this case for further proceedings.

21. On April 27, 1993, in light of the Eighth Circuit's ruling, this Court reopened *Donovan v. The Arkansas Judicial Discipline and Disability Commission,* LR–C–92–255, and placed it on the Court's active docket. In addition, the Court consolidated

*Donovan* with PB–C–91–218 for the limited purpose of deciding the jurisdictional issue.

22. On the 23rd day of September, 1993, the Court rejected defendants' challenge of the Court's jurisdiction to entertain both cases on the theory of the abstention doctrine.

23. The Court may take judicial notice of Amendment 66 of the Arkansas Constitution, Rule 12(F) of the Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission; the Arkansas Code of Judicial Conduct adopted by per curiam order of the Arkansas Supreme Court on June 6, 1988; the Arkansas Code of Judicial Conduct adopted by per curiam order of the Arkansas Supreme Court on July 5, 1993; and the Arkansas Rules of Criminal Procedure.

24. Canon Rule 7(B)(1)(c) of the Arkansas Code of Judicial Conduct, adopted by per curiam order of the Arkansas Supreme Court on June 6, 1988, states:

A candidate, including an incumbent judge, for a judicial office ...

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; *announce views on disputed legal or political issues;* or, knowingly misrepresent his identity, qualifications, present position or other fact.

25. The Preamble to the Revised Arkansas Code of Judicial Conduct, adopted by per curiam order of the Arkansas Supreme Court of July 5, 1993, states in pertinent part as follows:

... The Commentary is not intended as a statement of additional rules. When the text uses "shall" or "shall not," it is intended to impose binding obligations the violations of which can result in disciplinary action. When "should" or "should not" is used, the test is intended as hortatory and as a statement of what is or is not appropriate conduct but not as binding rule under which a judge may be disciplined. When "may" is used, it denotes permissible discretion or, depending on the context, it refers to action that is not covered by specific proscriptions....

26. Canon 5(A)(3)(d) of the Revised Arkansas Code of Judicial Conduct, adopted by per curiam order of the Arkansas Supreme Court of July 5, 1993, states:

A candidate* for a judicial office:

(d) shall not:

(i) make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office;

(ii) *announce views on disputed legal or political issues;* or

(iii) knowingly* misrepresent the identity, qualifications, present position or other fact concerning the candidate or an opponent.

27. The Commentary to Canon 5(A)(3)(d) of the Revised Arkansas Code of Judicial Conduct, adopted by per curiam order of the Arkansas Supreme Court of July 5, 1993, states:

Section 5A(3)(d) prohibits a candidate for judicial office from making statements that appear to commit the candidate regarding cases, controversies or issues likely to come before the court. As a corollary, a candidate should emphasize in any public statement the candidate's duty to uphold the law regardless of his or her personal views. See also Section 3B(9), the general rule on public comment by judges. Section 5A(3)(d) does not prohibit a candidate from making pledges or promises respecting improvement in court administration. Nor does this Section prohibit an incumbent judge from making private statements to other judges or court personnel in the performance of judicial duties. This section applies to any statement made in the process of securing judicial office, such as statements to commissions charged with judicial selection and tenure and legislative bodies confirming appointment. See also Rule 8.2 of the Arkansas Rules of Professional Conduct.

28. Plaintiff filed a Motion to Incorporate Canon 5(A)(3)(d) of the Revised Arkansas Code of Judicial Conduct into this cause of action, PB–C–91–218, on August 31, 1993. The defendants have filed no objections with the Court. Hence, the issue to determine the constitutionality of Canon 5(A)(3)(d) of

the Revised Arkansas Code of Judicial Conduct is before the Court.

29. On Beshear's August 18, 1993 motion to consolidate, the Court consolidated *Donovan*, LR–C–92–255, with *Beshear*, PB–C–91–218, for trial on December 13, 1993.

30. Defendants filed an answer in this action, PB–C–91–218, on October 22, 1993.

31. The major issue before the Court is to determine the constitutionality of both Cannon 7(B)(1)(c) of the Arkansas Code of Judicial Conduct, adopted by per curiam order of the Arkansas Supreme Court on June 6, 1988, and Canon 5(A)(3)(d) of the Revised Arkansas Code of Judicial Conduct, adopted by per curiam order of the Arkansas Supreme Court on July 5, 1993.

32. Plaintiff challenges, both as to form and as applied to him, the constitutionality of both Canon 7(B)(1)(c) of the Arkansas Code of Judicial Conduct and Canon 5(A)(3)(d) of the Revised Arkansas Code of Judicial Conduct. The defendants vigorously hold that both Canons are constitutional.

Regarding the defendants' motion for reconsideration on the issue of abstention, the Court stands by its September 23, 1993 amended order that analyzed the relevant factors and concluded that abstention is not appropriate.

In *Bates v. Little Rock*, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960), the Supreme Court emphasized:

> Where there is a significant encroachment upon personal liberty, the state may prevail only upon showing a subordinating interest which is compelling.

The defendants have asserted having an impartial judiciary as the compelling interest on behalf of the State of Arkansas justifying the restrictions imposed under Canon 7(B)(1)(c) and Canon 5(A)(3)(d). They point to *Stretton v. Disciplinary Bd. of the Supreme Court of Pennsylvania*, 944 F.2d 137 (3rd Cir.1991) and *Berger v. Supreme Court of Ohio*, 598 F.Supp. 69 (S.D.Ohio 1984) [1] as finding the equivalent canons in those jurisdictions necessary to achieve that goal. However, the defendants acknowledge that the more difficult question is with the breadth of the canons' language. They argue that when the Court gives a narrow construction to the canons at issue by interpreting them in the context of the preceding canons and caselaw [2] as to what views can or cannot be announced, the Court should find the disputed provisions are narrowly tailored to make certain judges will decide cases based on the facts and the law, and not upon their personal views to the electorate.

Plaintiff counters that plea bargaining is a function of court administration. He continues that since Donovan was admonished for his commitment to the voters to refuse to accept plea bargains, plaintiff would have to receive the same treatment or the disputed provisions of the canons would invite, or at least permit, arbitrary enforcement and the genuine threat of arbitrary enforcement. Plaintiff points to *A.C.L.U. v. The Florida Bar*, 744 F.Supp. 1094 (N.D.Fla.1990) [3] and *J.C.J.D. v. R.J.C.R.*, 803 S.W.2d 953 (Ky. 1991) [4] that found the same provision of Canon 7 to strictly prohibit dialogue on virtually every issue that would be of interest to the voting public.

This Court is persuaded that 7(B)(1)(c) and 5(A)(3)(d), which contain virtually the same language, in precluding a judicial candidate from expressing "his views on disputed legal or political issues" are substantially overbroad and vague. These provisions prevent

---

1. Affirmed, 861 F.2d 719 (6th Cir.1988) (Table, Text in Westlaw at 1988 WL 114792), rehearing denied 869 F.2d 1488 (6th Cir.1989) (Table, Text in Westlaw at 1989 WL 16135), cert. den. 490 U.S. 1108, 109 S.Ct. 3161, 104 L.Ed.2d 1023 (1989).

2. *In re Kaiser*, 111 Wash.2d 275, 759 P.2d 392 (1988).

3. In *A.C.L.U. v. The Florida Bar*, 999 F.2d 1486 (11th Cir.1993), the appellate court noted that

the district court later entered a permanent injunction of the provision of Canon 7(B)(1)(c) prohibiting the discussion of disputed legal and political issue on May 21, 1991.

4. As a result of this decision, Kentucky adopted new language for its canon which now passes constitutional muster. *Ackerson v. Kentucky Jud. Ret. & Removal Com'n*, 776 F.Supp. 309 (W.D.Ky.1991); *Deters v. Jud. Ret. & Removal Com'n*, 873 S.W.2d 200 (Ky.1994).

a significant amount of constitutionally protected conduct by inhibiting free expressions as well as imposing a chilling effect on a judicial candidate's efforts and desire to express his views to the public relative to problems confronting the judiciary and how the candidate proposes to deal with them. Indeed, 7(B)(1)(c) and 5(A)(3)(d) minimize the importance of free speech and openness in the very branch of the government that serves as guardian of the civil liberties of the people. These provisions impose a direct and substantial limitation on expressions that are secured under the First Amendment. In other words, these canons are too inclusive. On the other hand, they are vague. Defendants themselves refer to caselaw, which will occur on a case to case basis, as a way to define the involved language. Truly, a judicial candidate striving diligently to conduct a campaign that is consistent with the canons, without the benefit of any specific standards as a guide, would in all likelihood refrain from expressing his views, while permissible under the First Amendment, in order to avoid the risk of a probable cause hearing likely to result in a public reprimand as happened to Donovan. See, *Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224 (7th Cir.1993) which would not approve the lower court rewriting or narrowing the same provision and so struck the rule as unconstitutional.

Accordingly, plaintiff's motion for summary judgment is granted and defendants' motion for reconsideration and cross motion for summary judgment is denied. Declaratory judgment will be entered in favor of plaintiff and against defendants finding that Canon 7(B)(1)(c) of the Code and Canon 5(A)(3)(d) of the Revised Code of Judicial Conduct violate the First Amendment to the United States Constitution and permanently enjoining defendants from enforcing these provisions.

IT IS SO ORDERED.